UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**SCOTT BRYANT ELLIS,**

    **Plaintiff,**

  **v.**                                Case No. 20-CV-719

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Scott Bryant Ellis seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On July 7, 2016, Ellis filed an application for SSI, alleging disability beginning November 15, 2015 (Tr. 258) due to a herniated disc in the back, degenerative arthritis, bulging discs, and severe knee pain/arthritis (Tr. 463). Ellis' application was denied initially and upon reconsideration. (Tr. 258.) Ellis filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on December 7, 2018. (Tr. 278–318.) Ellis testified at the hearing, as did Karen Schneider, a vocational expert. (Tr. 278.)

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

In a written decision issued March 6, 2019, the ALJ found that Ellis had the severe impairments of disorders of the back, status post-corrective surgery and disorders of the right wrist, status post-surgical correction. (Tr. 261.) The ALJ found that Ellis did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 263.) The ALJ further found that Ellis had the residual functional capacity ("RFC") to perform light work, with the following limitations: limited to only occasional climbing of ramps, stairs, ladders, ropes, or scaffolds; occasional balancing, stooping, crouching, kneeling, or crawling; and occasional handling and fingering with the right upper extremity. (Tr. 264.)

Although the ALJ found that Ellis could not perform his past relevant work as a taxi driver and merchandise deliverer, the ALJ found that given Ellis' age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 269–71.) Specifically, the ALJ relied on the VE's testimony that the following jobs existed in the national economy for a person with Ellis' RFC: usher (5,000 nationally); children's attendant (5,000 nationally); fruit distributor (3,000 nationally); and sandwich board carrier (1,500 nationally). (Tr. 271, 311–12.) As such, the ALJ found that Ellis was not disabled since July 7, 2016, the application date. (Tr. 271.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Ellis' request for review. (Tr. 1–7.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal

standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to This Case*

Ellis argues the ALJ erred by: (1) failing to include limitations for his non-severe mental impairments—specifically anxiety—in his RFC, (2) failing to build a logical bridge between the evidence and the occasional handling and fingering limitation, and (3) improperly determining that a significant number of jobs existed in the national economy that Ellis could perform. Because I find the ALJ erred at step five in determining that a significant number of jobs existed in the national economy that Ellis could perform, the Commissioner's

decision is reversed and remanded for reconsideration consistent with this decision. I will not, however, address the merits of Ellis' remaining arguments.

At Step Five of the sequential five-step disability analysis, the government bears the burden of presenting evidence establishing that the claimant possesses the residual functional capacity to perform work that exists in significant numbers in the national economy. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The Commissioner typically uses a vocational expert to assess whether there are a significant number of jobs in the national economy that the claimant can do. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009).

Again, the VE testified that approximately 14,500 jobs existed in the national economy that Ellis could perform with his stated RFC, including: usher (5,000 jobs); children's attendant (5,000 jobs); food distributor (3,000 jobs); and sandwich board carrier (1,500 jobs). (Tr. 271, 311–12.) The ALJ relied on this testimony in finding that a significant number of jobs existed that Ellis could perform; thus denying his application for SSI. (Tr. 270–71.) Ellis argues that the ALJ improperly considered the number of jobs available in the national economy, without regard to the number of jobs available in the State of Wisconsin. (Pl.'s Br. at 18–24, Docket # 18.)

Several courts have recently addressed the alleged error that Ellis now raises. In addressing this same question, the court in *Sundsmo v. Saul*, No. 20-CV-100-WMC, 2020 WL 6817112 (W.D. Wis. Nov. 20, 2020), noted that while the issue presents "an interesting legal question," there is "no ready guidance" in finding an answer. *Id.* at *7. Recall that the government at step five must prove that work exists in <u>significant numbers</u> in the <u>national economy</u> that the claimant can perform. The regulations provide that the national economy includes either: (1) the "region" where the claimant lives or (2) several other "regions" of the

4

country. 20 C.F.R. § 416.966(a). The lack of clarity stems from two vital, but undefined terms found in the regulation addressing available work in the national economy—"region" and "significant numbers." I will address each in turn.

*What Area is Included in "Region"?*

Again, the regulations provide that the national economy includes either: (1) the "region" where the claimant lives or (2) several other "regions" of the country. 20 C.F.R. § 416.966(a). As previously stated, "region" is undefined; however, the regulation does provide that: "It does not matter whether . . . [w]ork exists in the immediate area in which you live." 20 C.F.R. § 416.966(a)(1); *see also* 20 C.F.R. § 416.966(c)(2) (stating that "lack of work in your local area," will not render you disabled if your RFC and vocational abilities "make it possible for you to do work which exists in the national economy"). Assuming "region where you live" includes your state and/or local area, the regulation provides that while available work *can* include work in the "region where you live" (and thus presumably closer to your home), it need not.

The regulations also provide that "work exists in the national economy" when it exists in significant numbers "in several other regions of the country." This operates to address two main concerns. First, disability cannot turn on where you live. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 526 (9th Cir. 2014) (finding that if the relevant job area for the purposes of the statutory definition of disability was limited to a claimant's local area, then the Commissioner could virtually never carry his burden if a claimant lives in a sparsely populated, rural area). In *Lopez Diaz v. Sec'y of Health, Ed. & Welfare*, 585 F.2d 1137 (1st Cir. 1978), the First Circuit explained that Congress "tightened the definition of disability," when

5

it excepted the availability of work in one's local area as a basis for finding disability. *Id.* at 1139. The *Lopez Diaz* court explained:

> Congress, tightening the definition of disability, eliminated consideration of travel difficulties when those difficulties were extrinsic to the claimed disability; the length and expense of commuting and the resulting inconveniences were no longer to influence a disability determination. A person, otherwise able to work, is in effect offered a choice: he can choose either to commute the distance to his job or he can move closer and avoid the expense and inconvenience. Disability insurance is not available to fund his decision to live far from available jobs.

*Id.* at 1140. Thus, so long as one's commuting difficulties are extrinsic to his or her disability, one's need to travel to find work is irrelevant to the disability determination. *See Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014) ("[T]he claimant's disability . . . makes the number of jobs in the region or the nation irrelevant, because it prevents her from moving. That immobility is a consequence of the disability, and so needs to be factored into the analysis of job availability.").

Second, disability should not be denied because the VE testifies as to the existence of uncommon jobs not generally available across the country. The regulations state that a claimant will not be denied disability benefits simply because jobs exist "only in very limited numbers in relatively few locations outside of the region where you live." 20 C.F.R. § 416.966(b). As the Seventh Circuit explained in *Barrett v. Barnhart*, 368 F.3d 691 (7th Cir. 2004), the "principal significance of the 'other regions' language in the statute is to prevent the Social Security Administration from denying benefits on the basis of 'isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the applicant] live[s].'" *Id.* at 692 (quoting 20 C.F.R. § 404.1566(b)).

In *Barrett v. Barnhart*, 355 F.3d 1065 (7th Cir. 2004), the Seventh Circuit caused some confusion when it stated that "the test is whether [claimant] is so disabled that there are no

6

jobs in *reasonable proximity* to where she lives that she is physically able to do." *Id.* at 1067 (emphasis added). The government sought rehearing, "distressed by one sentence in [the *Barrett* decision]"—the statement quoted above. *Barrett*, 368 F.3d at 691. The government argued that the law does not require, to defeat a finding of disability, that jobs exist in the immediate area in which the claimant lives. *Id.* The court noted that, in its experience, and as articulated by other circuits, "the vocational experts who testify in social security disability cases concerning the availability of jobs that the applicant has the physical ability to perform almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area." *Id.* (collecting cases). The court stated, however, that it was not intending to alter the statutory language; rather, its previous statement was "descriptively accurate." *Id.*; *see also Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015) ("Why local and state statistics are included is unclear, since if there is a significant number of jobs that the applicant for benefits can perform anywhere in the United States he is deemed not disabled . . . .").

In the end, the term "region" is likely undefined because it must be flexible, depending on the claimant's specific circumstances. *See Pollice v. Sec'y of Health & Hum. Servs.*, 1988 WL 28536 at *1, 843 F.2d 1392 (6th Cir. 1988) ("We believe it is clear that the term 'region' is flexible . . . .").

*What Number of Jobs is Significant?*

Again, to find a person not disabled, the jobs available in the claimant's "region" must exist in "significant numbers." But what number of jobs is significant enough to be sufficiently significant under the regulations? As one district court in this circuit recently noted, "[t]he Seventh Circuit has not affirmatively established the threshold for the number of jobs in the

national economy that qualifies as significant." *John C. v. Saul*, No. 19-CV-4111, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021). However, in *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011), the court stated that 140,000 jobs available nationally was "well above the threshold for significance," (without identifying, however, the threshold), and in *Primm v. Saul*, 789 F. App'x 539, 546 (7th Cir. 2019), found that 110,000 jobs nationally was enough to support the ALJ's finding.

The Seventh Circuit has also considered the question in terms of the availability of jobs in the claimant's local area, finding in *Liskowitz* that 4,000 jobs in the Milwaukee area was "significant." 559 F.3d at 743. The *Liskowitz* court further noted that "[a]s few as 174 jobs has been held to be significant," and that it was "well-established that 1,000 jobs is a significant number." 559 F.3d at 743. In reaching this determination, however, the court relied on a previous Seventh Circuit decision, *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993), in which the court found that 1,400 jobs in the Milwaukee area was "significant," as well as cases from five other circuits where the courts similarly considered significant numbers in the context of the state or local area, not the national economy. *See id.* (collecting cases).

Against this backdrop, courts in this circuit have recently grappled with the situation currently before me—what "region" is the VE to consider and what happens when the VE offers testimony regarding national numbers that are very low? In *James A. v. Saul*, 471 F. Supp. 3d 856 (N.D. Ind. 2020), the VE testified that there were approximately 14,500 jobs in the national economy that the plaintiff could perform. *Id.* at 859. The Commissioner argued, based on *Liskowitz*, that it was "well-established that 1,000 jobs is a significant number." *Id.* The *James A.* court, however, noted that *Liskowitz*'s discussion of 1,000 jobs as significant was not for jobs in the national economy, but for jobs in the Milwaukee area. *Id.* at 860. The court

reasoned that *Liskowitz*'s holding was of extremely limited utility when the VE testifies about national numbers. *Id.* The court stated that "[h]ad the Commissioner wanted to use regional numbers, he could have instructed his ALJs to request testimony from the VEs on this point." *Id.* The *James A.* court ultimately considered that Indiana's total population is approximately 2% of the United States' estimated total population and that 2% of 14,500 jobs was roughly 290 jobs. *Id.* Although the court did not rely on this "rough approximation of jobs available in Indiana" in making its determination, it found that the number illustrated why *Liskowitz*'s finding of 1,000 jobs being "well-established as significant" is of limited value for the analysis needed in its case. *Id.* The court concluded that 14,500 jobs is far below any national number of jobs that the Seventh Circuit has determined to be significant. *Id.*

In *Sundsmo*, the VE testified that a total of 67,327 jobs existed in the national economy that the plaintiff could perform. 2020 WL 6817112, *6. The court noted that plaintiff, "[b]ootstrapping on" the *James A.* decision, argued that the ALJ erred in failing to consider whether these jobs were significant in the State of Wisconsin. *Id.* The court noted that the *James A.* court specifically stated that it was not relying on the "rough calculation" it made regarding the percentage of jobs in Wisconsin based on the VE's testimony of national numbers, but used it as an illustration to show why reliance on *Liskowitz* was not useful. *Id.* The *Sundsmo* court stated that plaintiff had "raised an interesting legal question for which this court has no ready guidance, other than to note that the ALJ's reliance of evidence of jobs in the national economy in the tens of thousands to find the claimant capable of full-time work appears consistent with decades of case law and the applicable regulations, at least absent express reliance on regional or localized numbers by the ALJ or the agency on review." *Id.* at *7. The court noted that courts across this circuit have determined that 120,350 jobs in the

national economy was not a significant number, *id.* (citing *Sally S. v. Berryhill*, No 2:18-cv-460, 2019 WL 335033, at * 11 (N.D. Ind. July 23, 2019)), whereas other concluded that 40,000 jobs in the national economy was a sufficient number, *id.* (citing *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *17 (N.D. Ill. Dec. 19, 2019)). Absent clear guidance, the *Sundsmo* court concluded that 67,327 jobs in the national economy was significant and affirmed the Commissioner's decision.

*Ellis' Methodology for Determining Significant Job Numbers*

The crux of Ellis' argument in this case is that the Commissioner is comparing apples and oranges when the VE testifies as to national numbers and the Commissioner relies on cases such as *Liskowitz* to determine significance. Ellis asserts that in order to properly utilize the Seventh Circuit's case law, the VE's numbers must be converted to a statistically comparable unit so that the Court can compare apples to apples. Thus, Ellis argues that if I take the population of Wisconsin (approximately 5.82 million people) and the population of the United States (approximately 328 million people), I will find that Wisconsin's population makes up 1.8% of the total country's population. (Pl.'s Br. at 20, Docket # 18.) Ellis instructs I should then take the 1.8% figure and apply it to the job numbers the VE testified were available in the national economy. (*Id.*) When doing so, the result is as follows: usher (90 jobs); children's attendant (90 jobs); food distributor (54 jobs); and sandwich board carrier (27 jobs). (*Id.*) Ellis argues that now, with comparable units in hand, these numbers, compared to the 1,000 jobs in *Liskowitz*, are woefully short of significant. (*Id.* at 20–21.)

The Commissioner argues that Ellis' argument fails because the regulations, as well as the Seventh Circuit, have made clear that I need not consider state or local numbers in determining the availability of jobs. (Def.'s Br. at 15–16, Docket # 23.) As to Ellis'

10

extrapolation of job numbers to comparable units based on *James A.*, the Commissioner argues that even the *James A.* court noted that it was not relying on its "rough calculation" in finding the VE's stated job number insignificant. (*Id.* at 16.)[2]

Given the lack of clarity from the Seventh Circuit regarding "region" and "significant numbers," it is understandable why Ellis and other plaintiffs attempt to convert a VE's testimony regarding national numbers into state or local numbers. But this is misplaced. Although in many cases the VE will testify regarding jobs available within the State of Wisconsin, the VE in this case did not. And the VE need not. Again, "region" does not *have* to be the claimant's local area (although, of course, it could). But I do agree, given that *Liskowitz* focused on local numbers, it is of little to no value in guiding my determination in this case. So I am left with the numbers I have—14,500 jobs Ellis can perform in the national economy—and whether this number is significant. Unfortunately, I do not have clear guidance from the Seventh Circuit as to threshold significance for national numbers. The Commissioner argues, pointing to the law of other circuits, that 14,500 national jobs is significant. (Def.'s Br. at 17 n.4.) Specifically, she points to *Sanchez v. Comm'r Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017)—finding 18,000 national jobs significant; *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014)—finding 25,000 national jobs significant; *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997)—finding 10,000 national jobs significant; and *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016)—finding 6,000 national jobs significant.

---

[2] The Commissioner also argues that because Ellis focuses on his extrapolation argument, he either waived or forfeited his argument regarding job numbers because he did not specifically argue that 14,500 jobs in the national economy was insignificant. (Def.'s Br. at 17.) The Commissioner points to no authority requiring the claimant to first raise this issue before the agency before arguing it before this Court. Thus, I do not find the argument waived or forfeited.

But I am not persuaded that 14,500 jobs available nationally is enough to be "significant." The VE herself testified that the number of available jobs was "low" (Tr. 311) and when the Seventh Circuit has looked at national numbers, it has found that numbers in the hundreds of thousands (140,000 in *Weatherbee* and 110,000 in *Primm*) were sufficient to support the ALJ's finding. Furthermore, of the Commissioner's cited out-of-circuit authority, only two of the four cases dealt with numbers less than the 14,500 national jobs at issue here. And the court's finding in *Taskila* regarding the significance of 6,000 jobs nationally is particularly suspect as the court relies, at least in part, on *Liskowitz*'s finding that 1,000 jobs is significant to conclude that 6,000 jobs nationwide "fits comfortably within what this court and others have deemed 'significant.'" 819 F.3d at 905. As we know, *Liskowitz* does not rely on national jobs, but local numbers.

In the end, it is the Commissioner's burden at step five to show that jobs exist in significant numbers in the national economy that Ellis can perform, and I find that the Commissioner failed to meet her burden. Thus, the case will be reversed and remanded for the agency to elicit further testimony from the VE addressing the issues raised in this decision.

## CONCLUSION

Ellis seeks reversal and remand of this case on the basis that the ALJ did not rely on significant job numbers in the national economy when finding him not disabled. I agree the ALJ erred in this regard. Thus, the case will be reversed and remanded for reconsideration by the agency consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of August, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge